1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                              AT TACOMA
10
SUSAN ERICKSON,
11
                    Plaintiff,                    CASE NO. C08-5521BHS
12
        v.
13
STATE OF WASHINGTON,                             ORDER GRANTING IN PART
14  DEPARTMENT OF SOCIAL AND                      AND DENYING IN PART
    HEALTH SERVICES, SPECIAL                      DEFENDANTS' MOTION
15  COMMITMENT CENTER, McNEIL;                    FOR SUMMARY JUDGMENT
    ITS DIRECTOR; RICHARD MAY and
16  JANE DOE MAY, husband and wife,
17                  Defendants.
18
        This matter comes before the Court on Defendants' Motion for Summary

19  Judgment.  Dkt. 18. The Court has considered the pleadings filed in support of and in

20  opposition to the motion and the remainder of the file and hereby grants in part and denies

21  in part the motion for the reasons stated herein.

22                        **I.  PROCEDURAL HISTORY**

23          On July 25, 2008, Plaintiff Susan Erickson filed a complaint in the Superior Court

24  for the State of Washington in the County of Thurston against Defendants State of

25  Washington, Department of Social Health Services, Special Commitment Center, McNeil

26  Island; Its Director; and Richard and Jane Doe May. Dkts. 1-3 "Complaint" at 8.  Plaintiff

27  claims that Defendants are liable for Sexual Harassment Discrimination; Unlawful

28

ORDER - 1

Retaliation; Negligent Hiring, Retention and/or Supervision; Civil Rights Violation pursuant to 42 U.S.C. § 1983; Defamation; False Light; Intrusion into Seclusion; and Outrage. *Id.* at 17-22.

On August 27, 2008, the matter was removed to this Court and assigned to the undersigned. Dkt. 1.

On July 22, 2009, Defendants filed a Motion for Summary Judgment. Dkt. 18. On August 10, 2009, Plaintiff responded. Dkt. 21. On August 14, 2009, Defendants replied and moved to strike material that Plaintiff submitted in support of her response. Dkt. 26.

On August 10, 2009, the Court granted Plaintiff's request to voluntarily dismiss her claims of outrage, defamation, false light, intrusion into seclusion, and negligent hiring, retention, and/or supervision. Dkt. 20.

## II. FACTUAL BACKGROUND

In May of 2004, Plaintiff began working for the State of Washington's Department of Corrections. Dkt. 19, Declaration of El Shon Richmond, Exh. 1, Deposition of Susan Erickson ("Plaintiff's Dep.") at 28 (deposition pagination). In December of 2004, Plaintiff began working for the Department of Social and Health Services ("DSHS") as an intermittent, non-permanent Residential Rehabilitation Counselor ("RRC"), level 1, at the Special Commitment Center ("SCC"). Complaint, ¶ 4.1.

When Plaintiff arrived at the SCC, Defendant Richard May was employed there as an RRC, level 2. Complaint, ¶ 3.2. Mr. May was not a manager and had no supervisory authority over Plaintiff. Plaintiff's Dep. at 143. In March of 2005, Plaintiff began shadowing Mr. May as part of learning the job. Complaint, ¶ 4.2. Plaintiff's certified complaint alleges that Mr. May pursued her as follows:

> 4.2 . . . During a break, Defendant May approached Plaintiff Erickson and asked her on a date. Plaintiff Erickson declined the offer and told him she did not date people from work and that she liked to keep her work and private life separate.
> 4.3 The following weekend, Plaintiff Erickson was delivered flowers to her home with a card that read, "Thank you for making me smile." Shortly thereafter, Defendant May called the plaintiff at her home and asked her if she received the flowers. He said he wanted to send the

flowers to thank her for putting a smile on his face. Plaintiff Erickson told him she did not want him to call her or to send her flowers anymore. Defendant May said he felt very close to the plaintiff and wanted to spend time with her. Plaintiff Erickson reiterated that she was not interested in a relationship with someone from work.

4.4     Defendant May repeatedly called Plaintiff Erickson at her home and asked her to go to dinner. Plaintiff Erickson finally went to dinner with him in order to tell him to stop calling her. She brought her son with her. She informed Defendant May that he was making her very nervous and uncomfortable with his advances and that she wanted him to stop.

4.5     In about April of 2005, Defendant May called the plaintiff at her work while she was on duty. Again, he asked her to dinner and Plaintiff Erickson refused. A co-worker had answered the phone and after the call, the co-worker said, "Someone likes you . . . ." Thereafter, Defendant May called the plaintiff several more times at work and she was subjected to teasing by her co-workers.

4.6     Soon thereafter, Defendant May again called the Plaintiff's home and spoke with her son, who answered the phone. Then, when Plaintiff Erickson took the call, Defendant May said he wanted her to go out with him to celebrate his birthday. He told her that he had asked her son and her son said it was okay. Plaintiff Erickson responded that it was not up to her son to decide and she did not want to go out with him.

4.7     In about May of 2005, Defendant May visited Plaintiff Erickson while she was on duty at work and told her he wanted to take her to a bed and breakfast for the weekend. He said he had intimate feelings for the plaintiff and he wanted to get closer to her. He told her that he thought it was time they had sex. Plaintiff Erickson simply told him, "No." She felt very uncomfortable and could not believe he would approach her with such a request, especially at the job.

4.8     In about June of 2005, Defendant May visited the plaintiff's home uninvited and offered to give her money and to help her seventeen-year-old son buy a car. Plaintiff Erickson told him that she would not take his money and that she wanted her son to earn money to buy his own car. Then, after work one day, the plaintiff came home and her son gave her money saying that Defendant May gave it to him and was going to help him find a car.

4.9     Shortly thereafter, Defendant May took Plaintiff Erickson's son to purchase a car in the child's name for $800.00. When Plaintiff Erickson came home from work she learned what had happened and became very upset. She told Defendant May that it would not work to use her son to get to her and that he needed to take the car back. She also told her son he would need to give the car back, but her son explained that it was a gift in his name and pleaded with her to keep it. Plaintiff Erickson decided to allow her son to keep the car.

4.10    Within the next two weeks, Plaintiff Erickson approached Defendant May at work and very firmly told him not to call her and not to ask her on a date. Defendant May responded by visiting her home and asking to speak with the Plaintiff's son in order to get the car back. The child was not home.

4.11    In July of 2005, Defendant May again approached Plaintiff Erickson at work. He asked her to take a break with him. She felt very uncomfortable and asked him what he wanted. Defendant May said he was going to take her son to court in order to get his car back. Plaintiff Erickson

repeated that she had not wanted him to give her son a car, but that she would not help him get it back.

        4.12   About one week later, Richard May again approached the plaintiff and said that he had tried to call her but that her phone number had changed. Plaintiff Erickson said that she had changed her phone number so that he would stop calling her.

        4.13   Meanwhile, Plaintiff Erickson had observed Defendant May riding his motorcycle past her home on several occasions. He stopped in front of her home once while she was home.

Complaint.

      Plaintiff claims that on April 16, 2009, she informed her supervisor, Jack Gibson, that Defendant May was harassing her:

> I just told him that [Defendant May] was making me nervous and that he was bothering me and that – and I told him how he had asked me to go to a bed and breakfast, and I just felt I could not do my job when I had to worry about a staff.

Dkt. 25, Deposition of Susan Erickson, at 46 (deposition pagination). Plaintiff claims that Defendants did not respond in any way to this allegation of sexual harassment. *Id*. at 47-51.

      On August 31, 2005, Plaintiff filed a grievance with the human resources department regarding Defendant May's conduct. Complaint, ¶ 4.16. In September of 2005, Defendant May began disability leave that lasted until July of 2007. Complaint, ¶ 4.19.

      In October of 2005, Plaintiff was placed in a temporary position. Complaint, ¶ 4.20. On November 21, 2005, Plaintiff was placed back on intermitted status. Complaint, ¶ 4.22. Plaintiff alleges that Kelly Cunningham, a Program Area Manager, "had authority to decide the position" that Plaintiff held. Plaintiff Decl., ¶ 9. Moreover, Plaintiff alleges that Mr. Cunningham told her that her grievance was unfounded. *Id*.

### III. DISCUSSION

**A.    Defendants' Motion to Strike**

      A trial court may consider only admissible evidence on summary judgment. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Hearsay is an out of court statement offered to prove the truth of the matter asserted and is generally inadmissible.

*See* Fed. R. Evid. 801, 802. Moreover, a "document which lacks a proper foundation to authenticate it cannot be used to support a motion for summary judgment." *Hal Roach Studios, Inc. v. Feiner and Co., Inc.*, 896 F.2d 1542, 1551 (9th Cir. 1990).

In this case, Defendants argue that the Court should strike Plaintiff's declaration (Dkt. 24) because it "includes information that is not based on personal knowledge, and that it constitutes hearsay and speculation." Dkt. 26 at 2. The declaration does include inadmissible evidence, but the Court will not strike the entire document because it does contain some admissible factual allegations. Therefore, the Court grants Defendants' motion in part and will identify what facts from the declaration, if any, it will consider on summary judgment.

Defendants also challenge the admissibility of the allegations in Plaintiff's verified complaint. Dkt. 26 at 3. The Ninth Circuit, however, has previously held that a "verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify." *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985); *see also Moran v. Selig*, 447 F.3d 748, 759 n. 16 (9th Cir. 2006). Plaintiff's complaint does contain some inadmissible hearsay, but it also contains admissible factual allegations. Therefore, the Court denies Defendants' motion to strike Plaintiff's verified complaint and will identify what facts in the complaint, if any, it will consider on summary judgment.

**B.    Defendants' Motion for Summary Judgment**

Plaintiff's federal claims are confusing. Plaintiff has titled her federal claim "Violation of Civil Rights, 42 U.S.C. § 1983," but alleges that she

> has a right to be free from sex discrimination under the 14th Amendment of the United States Constitution and has a right to be free of sexual harassment in the workplace under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.

Complaint, ¶ 8.2.

This claim is confusing because 42 U.S.C. § 1983 ("Section 1983") is a procedural vehicle and does not provide substantive rights. The Supreme Court has stated that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). Moreover, the Court is unaware of any authority that holds that the 14th Amendment prohibits sex discrimination. Therefore, the Court dismisses Plaintiff's Section 1983 claim.

The Court will consider Plaintiff's claims for sex discrimination, sexual harassment, and unlawful retaliation as allegations of Title VII violations.

**1.     Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## 2. Title VII

Under Title VII of the Civil Rights Act of 1964, it is unlawful

> for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. §2000e-2(a)(1). Disparate treatment claims brought under Title VII are analyzed under the *McDonnell-Douglas* burden shifting framework. *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1093-94 (9th Cir. 2005). A plaintiff must first present a *prima facie* case of discrimination on the basis of a protected status. *Id*. at 1094. The evidence required at this stage is minimal and need not meet the preponderance of the evidence standard. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002). If she succeeds in establishing a *prima facie* case, there is a rebuttable presumption that the defendant committed unlawful discrimination. *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005). If the defendant offers a legitimate reason for adverse employment action, the presumption is defeated and the burden shifts back to the plaintiff to create a genuine issue of material

fact as to whether the proffered reason is pretext for discrimination. *Coghlan*, 413 F.3d at 1094.

### a.     Discrimination Based on Sex

In this case, there is no allegation that Defendants discriminated against Plaintiff because she was female. Therefore, Plaintiff has failed to establish a prima facie case of sex discrimination under Title VII.

### b.     Sexual Harassment or Hostile Work Environment

To prevail on a hostile workplace claim premised on sex, a plaintiff must show: (1) that she was subjected to verbal or physical conduct of a sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998). "[T]o ensure that Title VII does not become a general civility code," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted), "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Simple teasing . . . offhand comments, isolated incidents (unless extremely serious)" are not discriminatory changes in the "terms and conditions of employment." *Faragher*, 524 U.S. at 788.

In this case, Plaintiff argues that material questions of fact exist regarding "the conduct that [Defendant] May displayed towards [Plaintiff] during the period from mid-March 2005 through sometime in September 2005." Dkt. 21 at 9. Plaintiff alleges that Defendant May asked her out on multiple occasions and, on one occasion, stated that they should have sex at a bed and breakfast. The only questions of fact regard whether this conduct was unwelcome based on the evidence that, on multiple occasions, Plaintiff agreed to meet Defendant May outside of work. In fact, Defendants claim that "the vast

majority of [Plaintiff's] and [Defendant May's] interaction occurred away from the workplace" because Plaintiff decided to "have dinner with [Defendant] May, visit his home, allow him to visit her home, and to allow him to give/loan her and/or her son $1,300." Dkt. 18 at 10. Even if the conduct was unwelcome, Plaintiff must also show that the conduct created a hostile or abusive work environment.

Based on the alleged acts of Defendant May, Plaintiff has failed to show that she was subjected to conduct that was "sufficiently severe or pervasive." Plaintiff alleges that Defendant May asked her out on multiple occasions and that Defendant May, on a single occasion, suggested that they should have sex. Plaintiff has even conceded that Defendant May never threatened her or her physical well being. Plaintiff's Dep. at 52-53. Moreover, it is undisputed that, after Plaintiff talked with Mr. Gibson, Defendant May never again asked Plaintiff for sex. Plaintiff's Dep. at 42. Plaintiff has failed to show that these allegations are more than offhand comments or an isolated incident of unwelcome sexual conduct.

The Court finds that a reasonable person would not consider that Plaintiff's allegations, if true, are sufficient to meet the severe level of conduct required to support a claim for hostile work environment. Therefore, the Court grants Defendants' motion for summary judgment on Plaintiff's Title VII hostile work environment claim.

### c.    Retaliation

To establish a prima facie claim of retaliation under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citing *Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir. 1997)).

In this case, it is undisputed that Plaintiff engaged in a protected activity when she submitted a written grievance to the SCC's human resource office. With regard to an alleged adverse employment action, Defendants have failed to expressly contest this

issue. Instead, Defendants have focused their opposition on the element of causation. *See* Dkts. 18 at 11-13 and 26 at 5.

"The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two." *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004); *see e.g. Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that sufficient evidence of causation existed where adverse employment action occurred less than three months after the protected activity); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-32 (9th Cir. 1986) (concluding that there was adequate evidence of a causal link where the retaliatory action occurred less than two months after the protected activity).

In this case, Plaintiff has submitted evidence that at least supports an inference of causation. Plaintiff alleges that Mr. Cunningham, a Program Area Manager, "had authority to decide the position" that Plaintiff held. Plaintiff Decl., ¶ 9. Plaintiff also alleges that in November of 2005, approximately three months after Plaintiff filed her grievance, Mr. Cunningham told Plaintiff that her grievance was unfounded. *Id*. This evidence creates a question of fact whether Plaintiff's grievance is at least casually linked to her removal from temporary status to intermitted status.

Even if Plaintiff's prima facie case is tenuous, Defendants have failed to meet their burden in articulating a legitimate reason for Plaintiff's alleged adverse employment action. *See* Dkts. 18 at 13 and 26 at 5. Defendant argues that Plaintiff "has no legitimate or admissible evidence to establish that any relevant decision made by DSHS was actually an illegitimate cover for retaliation." Dkt. 18 at 13. But the burden is on Defendants to show that there was a legitimate reason for the alleged adverse employment action. Defendants have failed to submit any evidence in support of this burden.

Therefore, the Court denies Defendants' motion for summary judgment on Plaintiff's claim for retaliation under Title VII.

### 3. Washington Law Against Discrimination

The analysis for sexual harassment and retaliation claims under the Washington Law Against Discrimination ("WLAD") is substantially the same as an analysis under Title VII. *See Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406-407 (1985) (sexual harassment); *Milligan v. Thompson*, 110 Wn. App. 628, 638-639 (2002) (retaliation).

The Court finds that, as under Title VII, Plaintiff has failed to establish a sexual harassment claim under the WLAD because Defendant May's actions were not "sufficiently pervasive so as to alter [Plaintiff's] conditions of employment." *Glasgow*, 103 Wn.2d at 406. Therefore, the Court grants Defendants' motion for summary judgment on this claim.

On the other hand, the Court finds that Plaintiff has submitted evidence that establishes that material questions of fact exist regarding her claim for retaliation. Therefore, the Court denies Defendants' motion for summary judgment on this issue.

### IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 18) is **GRANTED in part** and **DENIED in part** as stated herein.

DATED this 23rd day of September, 2009.


_____
BENJAMIN H. SETTLE
United States District Judge